**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

[Additional Attorneys on Signature Page]

*Attorneys for Plaintiff,*
Michelle Adame

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MICHELLE ADAME,** | **Case No.:** 2:17-cv-01654-SVW-KS |
| **Plaintiff,** | |
| **v.** | **OPPOSITION TO MOTION TO COMPEL ARBITRATION** |
| **ALLY FINANCIAL, INC.,** | |
| **Defendant.** | |

*[left margin, rotated]* **Kazerouni Law Group, APC** — Costa Mesa, California

Opposition to Motion To Compel Arbitration
Case No.: 2:17-cv-01654-SVW-KS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. ii

I.     INTRODUCTION AND BRIEF STATEMENT OF FACTS ................. 1

II.    SUMMARY OF ARGUMENT ............................................... 2

III.   MS. ADAME IS WELL WITHIN HER RIGHT TO LITIGATE
       THE DISPUTE DUE TO ALLY FINANCIAL'S LONG
       HISTORY OF NON-COMPLIANCE WITH THE RULES
       OF THE AMERICAN ARBITRATION ASSOCIATION .................... 2

IV.    ALLY HAS WAIVED THE RIGHT TO ARBITRATE THE
       DISPUTE ON ACCOUNT OF ALLY'S NON-COMPLIANCE
       WITH AAA RULES ........................................................ 6

       A. Ally Financial's Non-Compliance Was Willful ............................. 7

       B. Ally's Conduct Is Prejudicial To Ms. Adame .............................. 11

V.     ALLY MATERIALLY BREACHED THE ARBITRATION
       AGREEMENT BY WILLFULLY FAILING TO COMPLY
       WITH THE RULES OF ARBITRATION AND BY
       REGISTERING A VERSION OF THE ARBITRATION
       CLAUSE THAT IS DIFFERENT FROM THE LANGUAGE
       IN THE LOAN AGREEMENT ............................................ 13

VI.    ALLY FINANCIAL MAY NOT COMPEL ARBITRATION
       BECAUSE THE ARBITRATION CLAUSE IS
       UNENFORCEABLE UNDER THE DOCTRINE OF
       UNCONSCIONABILITY ................................................... 16

       A. Procedural Unconscionability ....................................... 18

       B. Substantive Unconscionability ...................................... 19

VII.   SHOULD THE COURT GRANT THE MOTION TO COMPEL
       ARBITRATION, THE CASE SHOULD BE STAYED
       PENDING ARBITRATION RATHER THAN DISMISSED ............... 22

VIII.  CONCLUSION ............................................................ 23

Kazerouni Law Group, APC
Costa Mesa, California

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Alan v. Superior Court,*

  111 Cal. App. 4th 217 (2003) .................................................................. 5, 13

*Arguelles-Romero v. Superior Court,*

  184 Cal. App. 4th 825 (2010) ...................................................................... 17

*Armendariz v. Foundation Health Psychare Services, Inc.,*

  24 Cal. 4th 83 (2000) ................................................................................... 17

*AT&T Mobility LLC v. Concepcion,*

  563 U.S. 333 (2011) ................................................................... 17, 18, 23

*Brown v. Dillard's, Inc.,*

  430 F.3d 1004 (9th Cir. 2005) ..................................................................... 14

*Buckeye Check Cashing, Inc. v. Cardegna,*

  546 U.S. 440 (2006) ..................................................................................... 16

*Burton v. Cruise,*

  190 Cal. App. 4th 939 (2010) ................................................................. 11, 12

*Doctor's Associates, Inc. v. Casarotto,*

  517 U.S. 681 (1996) ..................................................................................... 17

*Fitz v. NCR Corp.,*

  118 Cal. App. 4th 702 (2004) ...................................................................... 20

*Flores v. Transamerica Homefirst, Inc.,*

  93 Cal. App. 4th 846 (2001) ........................................................................ 18

*Guess?, Inc. v. Superior Court,*

  79 Cal. App. 4th 553 (2000) .................................................................... 10, 12

*Gutierrez v. Autowest, Inc.,*

  114 Cal. App. 4th 77 (2003) ........................................................................ 22

Kazerouni Law Group, APC
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Cox Enterprises, Inc.,*

790 F.3d 1112 (10th Cir. 2015) ............................................................. 13

*In re Tyco Int'l Ltd. Sec. Litig.,*

422 F.3d 41 (1st Cir. 2005)............................................................. 12, 13

*Kaneko Ford Design v. Citipark, Inc.,*

202 Cal. App. 3d 1220 (1988) ............................................................. 12

*Little v. Auto Stiegler, Inc.,*

29 Cal. 4th 1064 (2003)............................................................. 20, 21

*Martinez v. Master Protection Corp.,*

118 Cal.App.4th 107 (2004) ............................................................. 6

*Merrill v. Merrill,*

103 Cal. 287 (1894) ............................................................. 15

*Nagrampa v. MailCoups,*

469 F.3d 1257 (9th Cir. 2006) ............................................................. 18

*Newton v. American Debt Services,*

854 F. Supp. 2d 712 (N.D. Cal. 2012) ............................................................. 18

*Norgren, Inc. v. Ningbo Prance Long, Inc.,*

2015 U.S. Dist. LEXIS 126716 (D.Colo. Sep. 22, 2015) ............................. 11, 14

*Radiator Specialty Co. v. Cannon Mills,*

97 F.2d 318 (4th Cir. 1938) ............................................................. 13

*Reichert v. General Ins. Co.,*

68 Cal. 2d 822 (1986) ............................................................. 13

*Sanchez v. Valencia Holding Co.,*

61 Cal. 4th 899 (2015) ............................................................. 20

*Sobremonte v. Superior Court,*

61 Cal.App.4th 980 (1998) ............................................................. 11

*Trompeter v. Ally Fin., Inc.*,

914 F. Supp. 2d 1067 (N.D. Cal. 2012) ...................................... 18, 19, 20, 21, 22

*Vimar Seguros Y Reaseguros v. M/V Sky Reefer,*

515 U.S. 528 (1995) ....................................................................... 17

*Volt Info. Scis. v. Bd. of Trs.*,

489 U.S. 468 (1989) ....................................................................... 18

*Wall Street Associates v. Becker Paribas, Inc.,*

818 F. Supp. 679 (S.D.N.Y 1993) .................................................. 13

*Whitney Inv. Co. v. Westview Dev. Co.*,

273 Cal. App. 2d 594 (1969) ......................................................... 14

**OTHER**

Restatement (Second) of Contracts § 208 (1979) ................................. 17

Kazerouni Law Group, APC
Costa Mesa, California

Opposition to Motion To Compel Arbitration
Case No.: 2:17-cv-01654-SVW-KS          iv

1

**I.      INTRODUCTION AND BRIEF STATEMENT OF FACTS**

2       The plaintiff, Michelle Adame ("Ms. Adame or "Plaintiff"), contends that

3   Ally Financial committed numerous violations of the Telephone Consumer

4   Protection Act ("TCPA") over the past several years by calling her cell phone

5   without an ATDS or prerecorded voice message without her consent, and even

6   following requests not to receive future calls. Compl., ¶¶ 7-18 (Dkt No. 1).  The

7   calls are believed to have been for debt collection purposes as it concerns an

8   automobile loan entered into by Ms. Adame with Acura 101 West on or about

9   April 12, 2012, which was apparently later assigned[1] to Ally Financial Inc.

10  ("Ally") for servicing.

11      As it concerns her TCPA claims, Ms. Adame's filed a demand to arbitrate

12  with the American Arbitration Association ("AAA"), which was received

13  electronically by the AAA on May 9, 2016, and Ally received a copy via certified

14  mail on May 16, 2016 at 11:20 a.m. in Detroit, Michigan.  On May 13, 2016,

15  AAA declined to administer the arbitration against Ally due to past non-

16  compliance with AAA's rules. [Pl.'s Exhibit B 07.][2] Indeed, Ally has a long

17  history of non-compliance with AAA's rules. Ally finally cured its non-

18  compliance with AAA on May 19, 2016, and Ally's counsel then invited Ms.

19  Adame to refile her dispute to AAA, but Ms. Adame respectfully declined.

20      Exercising her right to litigate the dispute due to Ally's non-compliance

21  with AAA rules, Ms. Adame filed suit in this Court on March 1, 2017 [Dkt. No.

22  1]. Ally has requested the Court compel Ms. Adame's claims into arbitration (Dkt.

23  No. 17), despite Ally's years of non-compliance with AAA's consumer arbitration

24  rules.  The motion to compel arbitration should be denied.

25

26  _____

[1] The date of assignment is not identified on the back of the loan agreement, nor is
27  the signature legible. See Dkt. No. 17-1, Ex. 1 (page 8 of 27); see also Dkt. No. 17-
2, Exhibit A.
28  [2] Plaintiff's exhibits are to the Declaration of Jason A. Ibey, filed herewith.

Opposition to Motion To Compel Arbitration
Case No.: 2:17-cv-01654-SVW-KS          1

*Kazerouni Law Group, APC*
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

## II.   SUMMARY OF ARGUMENT

There are several reasons that Ally's motion should be denied.  First, Ms. Adame properly elected to litigate this TCPA dispute pursuant to Rule R-1(d) of AAA's consumer arbitration rules, on account of Ally's long history of non-compliance with AAA's consumer arbitration rules, resulting in a denial by AAA to administer the arbitration on May 13, 2016.

Second, Ally has waived any right to arbitrate through conduct that is inconsistent with exercising a right to arbitrate the dispute.

Third, through Ally's non-compliance with AAA rules, resulting in a decision by AAA to deny to administer the arbitration, Ally has breached the arbitration agreement, entitling Ms. Adame to rescind the agreement. Ally is also equitably estopped from asserting arbitration for the same reasons.

Fourth, the arbitration agreement is procedurally and substantively unconscionable and therefore unenforceable under California contract law.

## III.   MS. ADAME IS WELL WITHIN HER RIGHT TO LITIGATE THE DISPUTE DUE TO ALLY FINANCIAL'S LONG HISTORY OF NON-COMPLIANCE WITH THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION

The consumer arbitration rules of the AAA apply to the dispute at issue under the TCPA for Ally's many unlawful calls to M. Adame.  AAA Rule R-13 states, "When the consumer and the business agree to arbitrate under these Rules or other AAA rules [], the parties also agree that the AAA will administer the arbitration." Pl.'s Exhibit A 17; Ibey Decl., ¶ 4.[3]  "The claimant must [] send one copy of the Demand to the AAA at the same time the demand is sent to the respondent" (under Rule R-2(a)(2)), "the claimant may file at any of the AAA's offices" (under Rule R-2(a)(3). Pl.'s Exhibit A 12. Also, Rule R-1 says, "When parties have provided for the AAA's rules or AAA administration as part of their

---

[3] Plaintiff files concurrently a Request for Judicial Notice.

consumer agreement, they shall be deemed to have agreed that the application of the AAA's rules and AAA administration of the consumer arbitration shall be an essential term of their consumer agreement." Pl.'s Exhibit A 09.

Here, Ms. Adame has elected under the applicable AAA rules to litigate the dispute with Ally in this Court (see generally, Dkt. No. 17-1, ¶ 9; Def's Exhibit 7). Prior to filing her demand to arbitrate with the AAA, Ms. Adame was not aware of Ally's long history of non-compliance with AAA's rules. [Adame Decl., ¶ 5.]

Documents produced from AAA in response to a document subpoena from Ms. Adame show an unmistakable pattern of disregard by Ally for AAA's rules going as far back as the year 2013. See Pl.'s Exhibit B 07 (AAA noted non-compliance in a "previously-filed consumer matter"); Exhibit B14-15, and 26 (Ally did not respond to a case initiation/fee in 2013, causing AAA to close the case); Exhibit B 17 (noting other cases where AAA decline to administer arbitration involving Ally due to non-compliance going as far back as a case in 2013); Exhibit B 19, 22 and 24[4] (noting AAA declined to administer arbitration in the case of Falsone v. Ally Financial because Ally did not pay the required fees); Exhibit B (In a letter from AAA on January 11, 2016, AAA noted that it declined to administer the arbitration in Sharon Bell v. Ally Financial, Inc. due to prior non-compliance by Ally, specifically for not timely sharing the filing fees and/or failing to waiver a provision in its consumer contract that AAA identified as a material and substantial deviation from AAA's Protocol); Exhibit B 31 (In a letter from AAA on February 10, 2016, AAA noted that it declined to administer the arbitration in Austin and Claudine Ferrell v. Ally Financial, Inc. due to prior non-compliance by Ally, specifically for not timely sharing the filing fees and/or failing to waiver a provision in its consumer contract that AAA identified as a material and substantial deviation from AAA's Protocol); Exhibit B 33 (In a letter

---

[4] A case on "DNA" status is one that AAA "decline due to past non-compliance" (Pl's Exhibit B 25).

Kazerouni Law Group, APC
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

from AAA on May 5, 2016, AAA noted that it declined to administer the arbitration in April Clark v. Ally Financial, Inc. due to prior non-compliance by Ally, specifically for not timely sharing the filing fees and/or failing to waiver a provision in its consumer contract that AAA identified as a material and substantial deviation from AAA's Protocol); Exhibit B 35 (In a letter from AAA on April 20, 2016, AAA noted that it declined to administer the arbitration in Johanna Funes v. Ally Financial, Inc. due to Ally's failure "to comply with the AAA's policies regarding consumer claims"); see also Exhibit B 37. Notably, AAA has several times instructed Ally to "remove the AAA from its consumer arbitration agreements so that there would be no confusion to the public" (Pl.'s Exhibit B 07, 20, 28 and 31).

Specifically, AAA Rule 1-(d) permits Ms. Adame to litigate this dispute against Ally.  Rule 1-(d) reads in pertinent part:

> Should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

[Pl.'s Exhibit B 10].[5]

Ally cannot reasonably deny its non-compliance with AAA rules at the time Ms. Adame submitted the demand for arbitration on May 9, 2016.  Likely aware of AAA Rules 1(d), Ally, through an attorney (Ms. Givental), tried to block Ms. Adame's right to litigate the dispute by suggesting on June 24, 2016 that Ms. Adame "refile" the demand to arbitrate (Dkt. No. 17-1, Exhibit 6). This is an unfortunate example of Ally trying to take advantage of Ms. Adame, a non-attorney.  Adame Decl., ¶ 8.

---

[5] Similarly, AAA's Rule 12 reads: "If the AAA declines to administer a case due to the business's non-compliance with this notification requirement, the parties may choose to submit their dispute to the appropriate court." [Pl.'s Exhibit A 17.]

Kazerouni Law Group, APC
Costa Mesa, California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The AAA's May 13, 2016 denial letter stated, "According to R-1(d) of the Consumer Arbitration Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution." Ms. Adame did not resubmit a demand to arbitrate, as such was only discretionary, and Ms. Adame has elected to seek resolution of the dispute in a Court of law. See Dkt. No. 17-1, Def.'s Exhibit 5 (AAA indicates that after Ally's compliance, the "parties may resubmit their dispute to the AAA for administration," emphasis added).

Ms. Adame exercised her right to litigate the dispute, and had informed Ally that she would be filing suit in court due in part to an anticipated further delay in resolution of the dispute due to Ally's prior non-compliance and registering of a consumer arbitration clause that was different from the arbitration clause in the automobile loan agreement later assigned to Ally. See Dkt. No. 17-1, Def.'s Exhibit 7 (On June 25, 2016, Ms. Adame informed counsel for Ally: "Re-filing would certainly take longer for them to review the arbitration clause of the RISC and then judge whether or not to proceed"). Thus, a ruling that Ally must litigate the dispute rather than force Ms. Adame into arbitration is justified in light of Ally's non-compliance with AAA rules.

The decision in *Alan v. Superior Court*, 111 Cal.App.4th 217, 228 (2003) supports Ms. Adame's right to litigate the dispute where the AAA declined to arbitrate on account of Ally's non-compliance. In *Alan*, the arbitration agreement limited the arbitral forum to the NASD, but NASD would not provide a location to arbitrate in California. The court "conclude[d] that, here, the arbitration provisions will fail in their entirety without NASD participation because the forum selection provisions are an integral part of the agreements to arbitrate. The parties agreed to an NASD forum, and the NASD will not provide one in California." Thus, where "the forum selected by [the parties]—declines to hear the matter, the dispute is to be tried in court." *Alan*, 111 Cal.App.4th at 224 (emphasis

added).

Similarly, in the matter of *Martinez v. Master Protection Corp.*, 118 Cal.App.4th 107, 121-122 (2004), the court did not require the plaintiff to arbitrate the dispute before AAA because the parties in this case agreed to the AAA forum, but AAA refused to participate. Thus, "the trial court erred in denying Martinez's motion to restore the matter to the active civil litigation calendar after AAA refused to conduct the arbitration." *Id.*

Therefore, under the AAA rules (R-1(d) and also R-12), Ms. Adame may, and indeed does elect, to litigate the dispute with Ally. Consequently, the Court should deny with prejudice Ally's motion to compel arbitration.

## IV.  ALLY HAS WAIVED THE RIGHT TO ARBITRATE THE DISPUTE ON ACCOUNT OF ALLY'S NON-COMPLIANCE WITH AAA RULES

Should the Court not find that Ms. Adame may elect under the AAA rules to litigate the dispute, Ally's conduct with respect to the claims of Mr. Adame and prior disputes by other consumers amounts to waiver of any right to arbitrate the dispute between the parties.

Again, Ally cannot reasonably dispute that it failed to comply with the rules of the AAA, which willful conduct resulted in AAA declining to administer the demand for arbitration made by Ms. Adame on May 9, 2016. That denial letter is dated May 13, 2016,[6] and states in part:

> Claimant has filed with us a demand for arbitration. We note that the arbitration clause provides for arbitration by the American Arbitration Association ("AAA").
>
> We must, at this time, decline to administer this claim and any other claims between Ally Financial, Inc. and its

---

[6] The letter states that a copy was mailed to Ally at the address: 200 Renaissance Center, PO box 200, Detroit, MI 48243. Dkt. No. 17-1, Exhibit 2; see also Ibey Decl., ¶ 7; Pl.'s Exhibit G (showing address on a filing with the government).

Kazerouni Law Group, APC
Costa Mesa, California

consumers because the business failed to comply with the AAA's policies regarding consumer claims. These policies can be found on our web site, www.adr.org, in the Consumer Due Process Protocol ("Protocol") and the Consumer Arbitration Rules.

[Dkt. No. 17-1, Exhibit 2].

## A.   Ally Financial's Non-Compliance Was Willful

The failure by Ally to comply with the AAA rules (more than one rule was violated) is willful.  It was an economic decision by Ally to avoid having to pay the annual fee charged by AAA for companies to register their arbitration clause with AAA's online arbitration registry, and in the past Ally "did not timely submit its share of the filing fees and/or failed to waive a provision in its consumer contract that the AAA identified as a material and substantial deviation from the Protocol."[7]   See Dkt. No. 17-1,[8] Def.'s Exhibit 3 (referring to "future Registry annual fee notices").   Regardless, Ally failed to comply with AAA rules on numerous occasions since 2013, and that was the reason AAA declined to arbitrate the TCPA dispute at issue here.

It was only after Ms. Adame demanded Ally arbitrate the dispute over 100 unwanted automated calls to her cell phone (Compl., ¶¶ 7-15) that Ally made the decision to comply with AAA rule Rule-12 (consumer the consumer clause registry, see Exhibit A 16-17, and 36) and register its consumer clause with AAA and pay the $500 fee to do so.  The consumer clause was not registered with the

---

[7] The purpose of the consumer clause registry is twofold: 1) to allow consumers to view the arbitration language and understand which type of disputes that AAA is willing to administer; and 2) provide a degree of due process by only posting consumer clauses that meet the AAA's minimum due process standards. See Dkt. No. 17-1, Def.'s Exhibit 3, pp. 12 of 27.

[8] Ally did not file its exhibits as separate docketed entries, which means there are 7 exhibits to the declaration of Alisa A. Givental filed at Dkt. No. 17-1.

Kazerouni Law Group, APC
Costa Mesa, California

AAA until May 19, 2016[9] (Ibey Decl., ¶ 6; Pl.'s Exhibit C; see also Exhibit B 16[10]) even though the automobile loan contract between Ms. Adame and Acura 101 West (which was assigned shortly thereafter to Ally for servicing) containing arbitration language was signed by Acura 101 West on April 9, 2012 (Dkt. No. 17-2, Exhibit A) – nearly four years prior.

Tellingly, once Ally finally registered its consumer arbitration clause with the AAA, Ally suggested to Ms. Adame that she refile her demand to arbitrate (Dkt. No. 17-1, Def.'s Exhibit 4 ["she can refile her claim with AAA"); and Def.'s Exhibit 7, pp. 26of 27 ("If you were to refile your claim with AAA, it is my understanding that it would not be declined by AAA at this time.")].  Ally likely understood that if it could convince Ms. Adame to refile the demand to arbitrate that would prevent Ms. Adame from relying on AAA rule 1(d) to litigate the dispute, thus allowing Ally to avoid federal court review of the alleged unlawful TCPA practices. This type of gamesmanship with consumers by Ally should not be rewarded.  Due to the potential for abuse, even AAA requested well before the May 13, 2016 letter that AAA "remove the AAA from its consumer arbitration agreements so that there would be no confusion to the public" (Pl.'s Exhibit 07, 20, 28 and 31).

Ally, has, in all fairness to Ms. Adame, given up (or waived) the right to compel Ms. Adame to arbitrate the dispute. To find otherwise would set a bad precedent. Ally should not be allowed to fail to take important steps necessary to ensure the arbitration process could be timely administered.[11]  Only when it was convenient (speaking in the sense of a strategic legal response) for Ally did it eventually register its consumer arbitration clause and pay the associated fee. Ally then tried to persuade the consumer (Ms. Adame, a non-attorney) to go

---

[9] Ten days *after* Ms. Adame submitted her demand to arbitrate the Ally.

[10] See also Pl's Exhibit G, and Ibey Decl., ¶ 7.

[11] It has now been over one year since the demand to arbitrate was filed by Ms. Adame on May 9, 2016.

Kazerouni Law Group, APC
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

through the effort and expense of re-filing her arbitration demand (Dkt. No. 17-1, Exhibit 6).  Here, Ms. Adame did what she was supposed to do by initially submitting a demand to arbitrate prior to seeking redress in federal court for alleged numerous TCPA violations.  Ally, on the other hand, did not.

Second, after Ally's failure to comply with AAA rules was made known to Ms. Adame through AAA's denial letter, and Ally later registered its consumer arbitration clause with the AAA, Ally agreed to attempt to mediate the dispute with Ms. Adame before a private mediator – outside of arbitration.[12]  That mediation was not successful, and subsequently Ms. Adame hired counsel and initiated the present legal action to seek redress for Ally's TCPA violations. [Adame Decl., ¶ 12.] By agreeing to mediation, rather than insisting that the dispute had to be arbitrated despite Ally's admitted prior failure to comply with AAA's rules, Ally has further demonstrated its waiver of any right to arbitrate the dispute.

Ally will likely respond in a reply brief that it invited Ms. Adame to refile the demand to arbitration.  However, that invitation is not the same as insisting on a right to require the dispute be arbitrated. As explained above, that was merely an attempt to trick Ms. Adame into having to arbitrate the dispute and avoid the negative effects of Ally's prior willful failure to comply with AAA's rules.

Third, Ally has waived any right to arbitrate through its extended history of non-compliance with AAA rules even after Ally was on express notice from AAA of its non-compliance over a period of several years. The May 13, 2016 denial letter from AAA makes this clear when stating:

"On a previously-filed consumer matter, this business did

---

[12] Ally complains that Ms. Adame waited 10 months to file the lawsuit, but Ally makes no mention of the parties' mediation before the lawsuit was filed. Additionally, the date of "April 10, 2016" in paragraph 10 of the Declaration of Alisa A. Givental (Dkt. No. 17-1) is incorrect. The correct year of that communication is "2017." Declaration of Abbas Kazerounian, ¶ 4, filed herewith.

1     not timely submit its share of the filing fees and/or failed
2     to waive a provision in its consumer contract that the
3     AAA identified as a material and substantial deviation
   from the Protocol. The AAA sent correspondence
4     informing the business that it may decline to administer
5     consumer arbitrations involving this business and
   requested that the business remove the AAA from its
6     consumer arbitration agreements so that there would be
   no confusion to the public."

7  [Pl.'s Exhibit B 07; Dkt. No. 17-1, Exhibit 2].

8       The May 13, 2016 letter does not indicate the date of the "previously-filed
9  consumer case" (however, through a document subpoena Ms. Adame has learned
10 the "previously-filed consumer case" refers to an arbitration case from 2013,
11 Exhibit B 07, 16, and 17).  It is evident that Ally did not comply with AAA's rules
12 concerning the consumer clause registry until May 19, 2016 (Pl.'s Exhibits C and
13 H; see also Dkt. No. 17-1, Def.'s Exhibit 3), despite Ally's knowledge of non-
14 compliance, which amounts to a willful non-compliance going back years.

15      This is a good example of waiver by conduct before moving to compel
16 arbitration. *See Guess?, Inc. v. Superior Court*, 79 Cal.App.4th 553, 557 (2000)
17 (noting that waiver may occur in "situations in which the proponent of arbitration
18 has *previously* taken steps inconsistent with an intent to invoke arbitration"). The
19 conduct by Ally evidences an intention to waive arbitration, or in other words, not
20 to enforce the arbitration provision.

21      If Ally could not, or chose not to, comply with the arbitration rules of the
22 AAA for several years, Ally cannot reasonably contend that it has not waived the
23 right to arbitrate, especially where the AAA had requested several times that Ally
24 remove AAA from its consumer arbitration agreements to avoid public confusion.
25 For the same reasons, Ally should be equitably estopped from asserting
26 arbitration, given Ms. Adame fulfilled her part of submitting the demand to
27 arbitrate and serving a copy on Ally (Exhibit B 03; Dkt No. 17-1, Exhibit 1;
28 Adame Decl., ¶ 4), yet Ally engaged in a history of non-compliance with AAA's

Kazerouni Law Group, APC
Costa Mesa, California

rules which was previously unknown to Ms. Adame (Adame Decl., ¶ 5).

Ally should not now, only when it faces a filed lawsuit in federal court seeking damages under the TCPA for over 100 alleged unlawful calls and years of non-compliance with AAA rules, be able to compel arbitration of Ms. Adame's dispute.

## B.   Ally's Conduct Is Prejudicial To Ms. Adame

Ally's conduct is prejudicial to the interests of Ms. Adame, in terms of lost time and money.  Courts may consider the expense incurred by that party and the length of delay. *Sobremonte v. Superior Court,* 61 Cal.App.4th 980, 995 (1998).  "[T]he critical factor in demonstrating prejudice is whether the party opposing arbitration has been substantially deprived of the advantages of arbitration as a speedy and relatively inexpensive means of dispute resolution." *Burton v. Cruise*, 190 Cal.App.4th 939, 948 (2010).

The court in *Norgren, Inc. v. Ningbo Prance Long, Inc.,* cautions that the "laudable objectives [of arbitration] may be frustrated if an arbitration provision is exploited as a tool for gamesmanship or evasion." 2015 U.S. Dist. LEXIS 126716, at *37.  Here, Ally cannot have it both ways – i.e., it cannot claim arbitration is its important contractual right and fail to hold up its end of the contract to arbitrate disputes through its non-compliance (and long history of non-compliance) with AAA's consumer arbitration rules.

By seriously and inexcusably delaying in registering its consumer clause with AAA, which was only done about 4 years after the automobile loan agreement was signed, and AAA was aware of its non-compliance as far back as 2013, Exhibit B 07, 14-19, and 30-31, Ally has, in all fairness, given up – waived – the right to compel Ms. Adame to arbitrate the dispute. Ally should not be allowed to knowingly fail to take important steps necessary to ensure the arbitration process could be timely administered by AAA, and also avoid having to pay the fee to register its clause with AAA, but then when it is convenient for

Kazerouni Law Group, APC
Costa Mesa, California

Ally it pays the fee to AAA and tries to force Ms. Adame into arbitration after Ms. Adame exercised her option under AAA rules to litigate (*see* R-1(d); and R-12).

It has been over 1 year since Ms Adame submitted her demand for arbitration on May 9, 2016. Dkt No. 17-1, Exhibit 1; Pl.'s Exhibit B 07. Due to Ally's non-compliance with AAA's rules, Ms. Adame's dispute has still not been resolved (even after a mediation attempt), and would have likely been resolved (with a final binding arbitration decision) many months ago in arbitration had Ally complied with AAA's rules initially and not caused delay in the administration of arbitration. Although Ms. Adame was eventually refunded the $200 fee to submit the arbitration demand (paid on May 9, 2016), there was still a period of several months before Ms. Adame was refunded the $200. The $200 fee to submit the arbitration demand was refunded via check issued by AAA on August 23, 2016. [dame Decl., ¶¶ 4 and 9; Pl.'s Exhibit B 11, and Exhibit D.]  Further, Ms. Adame incurred the out-of-pocket expense of $5.12 to serve the demand to arbitrate by certified mail on Ally (per AAA rules). Adame Decl., ¶ 10; Pl.'s Exhibits E and F.

Ms. Adame incurred expense in both serving the arbitration demand on Ally is not large ($5.12, Adame Decl., ¶ 10) and having to wait 106 days for refund check for the $200 filing fee (*id*. at ¶¶ 4 and 9). Importantly, only a modicum of prejudice need be shown, and that has been shown here. *See In re Tyco Int'l Ltd. Sec. Litig.,* 422 F.3d 41, 46 (1st Cir. 2005) ("In these circumstances, we require simply that Tyco demonstrate a 'modicum of prejudice,' *id.*, and it cannot be disputed that Tyco is 'out its expenses,' in submitting the doomed AAA demand for arbitration, in filing its district court complaint, and in defending against not one, but two, motions for compelled arbitration.").

Therefore, Ms. Adame, due to the fault of Ally, has been deprived of the speedy and relatively inexpensive means of dispute resolution. *See Burton,* 190 Cal.App.4th at p. 948; *Kaneko Ford Design v. Citipark, Inc*., 202 Cal. App. 3d 1220, 1228-1229 (1988) (finding prejudice "from . . . delay in the forms of time

and effort spent, legal expenses and costs incurred, and the disclosure of [the other party's] defenses and strategies."); *see also Guess?, Inc. v. Superior Court*, 79 Cal.App.4th 553, 558 (2000) ("Through Kirkland's delay--which it has not even *tried* to explain--Guess has lost whatever efficiencies that would otherwise have been available to it through arbitration.").

As the Tenth Circuit has acknowledged, "arbitration laws are passed to expedite and facilitate the settlement of disputes and avoid the delay caused by litigation. It was never intended that these laws should be used as a means of furthering and extending delays." *In re Cox Enterprises, Inc.*, 790 F.3d at 1118 (quoting *Radiator Specialty Co. v. Cannon Mills*, 97 F.2d 318, 319 (4th Cir. 1938). Ally cannot dispute here that it has caused a delay on account of its non-compliance (and history of non-compliance) with AAA rules, thus prejudicing Ms. Adame. "Even as justice delayed may amount to justice denied, so it is with arbitration." *In re Tyco Int'l Ltd. Sec. Litig.,* 422 F.3d at 46.

In sum, Ally has waived any right to arbitrate the dispute.

## V.   ALLY MATERIALLY BREACHED THE ARBITRATION AGREEMENT BY WILLFULLY FAILING TO COMPLY WITH THE RULES OF ARBITRATION AND BY REGISTERING A VERSION OF THE ARBITRATION CLAUSE THAT IS DIFFERENT FROM THE LANGUAGE IN THE LOAN AGREEMENT

An agreement to arbitrate before a particular forum is as integral a term of a contract as any other. *Alan,* 111 Cal.App.4th at p. 228, quoting *Wall Street Associates v. Becker Paribas, Inc.,* 818 F. Supp. 679, 683 (S.D.N.Y 1993). The essential elements of a claim for breach of contract are: (1) the existence of a contract, (2) a breach of the contract, (3) performance or excuse from performance by the non-breaching party, and (4) damages resulting to the non-breaching party from the other party's breach. *Reichert v. General Ins. Co.*, 68 Cal. 2d 822, 830 (1986). A party to a contract may rescind if there is a material breach by the other party. Civ. Code, § 1689, subd. (b)(2).

Kazerouni Law Group, APC
Costa Mesa, California

**Kazerouni Law Group, APC**
Costa Mesa, California

Here, by failing to comply with AAA's rules, resulting AAA declining to administer the arbitration (Dkt. No. 17-1, Exhibit 1), Ally materially breached the arbitration agreement, entitling Ms. Adame to litigate her case in court. AAA even instructed Ally on several occasions, prior to the arbitration demand from Ms. Adame, to remove AAA from its consumer agreements due to non-compliance (Pl.'s Exhibit B 07, 20, 28 and 31).

In *Norgren, Inc. v. Ningbo Prance Long, Inc.,* 2015 U.S. Dist. LEXIS 126716, at *38 (D.Colo. Sep. 22, 2015), the Colorado federal court held that NPL's failure to pay the arbitration fees in the first arbitration was a default and breach of the arbitration agreement, and thus NPL waived its right and was precluded from subsequently attempting to enforce that arbitration agreement in the second arbitration. "A bedrock principle of California contract law is that he who seeks to enforce a contract must show that he has complied with the conditions and agreements of the contract on his part to be performed." *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005).

Similar to *Norgren* in breaching the arbitration agreement, Ally materially breached the arbitration agreement here through its clear lack of compliance with AAA's rules, which is a significant failure to perform under the agreement (an adhesion contracts drafted by someone other than Ms. Adame and sought to be enforced by Ally), which caused AAA to decline to administer the arbitration, at least initially. [Exhibit B 07; Dkt. No. 17-01, Exhibit 1.]

This resulted in Ms. Adame being unable to speedily arbitrate and resolve the dispute outside of court, costing Ms. Adame time and expense, as explained below. *See Whitney Inv. Co. v. Westview Dev. Co.*, 273 Cal. App. 2d 594, 602 (1969) (a material breach deprives the non-breaching party of a substantial benefit under the contract). Importantly, "[w]here a contract requires successive steps to be taken by the respective parties, if, when a step becomes due the party, either in words or by their equivalent in acts, declines to take it, or is unable, while the

Kazerouni Law Group, APC
Costa Mesa, California

other is ready and willing, to do his part, the latter may rescind the contract." *Merrill v. Merrill*, 103 Cal. 287, 291 (1894) (citation omitted).  Ms. Adame seeks such rescission here, which is appropriate.

AAA's rules require Ally to submit its consumer clause for AAA's registry. [Pl.'s Exhibit A 16-17 (Rule R-12), 32, and 36.] It was not until about 4 years after the automobile loan contract was signed that AAA registered its consumer clause with AAA, and ten days after the May 9, 2016 demand for arbitration to Ally, that Ally registered finally its consumer clause with AAA (Pl.'s Exhibit H; Ibey Decl., ¶¶ 6 and 8).

Ms. Adame also notes that the arbitration clause that Ally eventually registered with the AAA is not the same clause that is found in the in the automobile loan agreement signed by Ms. Adame.  See Dkt. No. 17-1, Def.'s Exhibit 7 ("I noted that the arbitration clause was quite different to the RISC originally given"); see also Adame Decl., ¶ 6. There indeed are differences, some of which are material:

| Loan Agreement (Dkt. No. 17-2) | Clause Registered with AAA (Pl.'s Exhibit H) | Location |
|---|---|---|
| Say "Arbitration clause" | Says "Arbitration Provision" | Lines 1 and also 5, in the first paragraph |
| Mentions "National Arbitration Forum" | Does not mention "National Arbitration Forum" | Line 7 in the first paragraph |
| Includes the language "applicable statute of limitations" | Does not include the language "applicable statute of limitations" | Line 11 in the second paragraph |
| Reads: "We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to | Reads: "We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum | In the second paragraph |

| | | |
|---|---|---|
| a maximum of $2500, which may be reimbursed be decision of the arbitrator at the arbitrator's discretion." | of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more." | |
| The only specified self-help remedy is "repossession" | Specifies self-help remedies specified are "repossession, or by filing an action filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief" | In the third paragraph |

Ally therefore further breached the arbitration agreement by taking action inconsistent with the agreement, i.e., registering with the AAA a version of the arbitration clause that is different from the one contained in the automobile loan agreement signed by Ms. Adame.

Therefore, Ally has breached the arbitration agreement, which entitles Ms. Adame to rescind the agreement to arbitrate and to litigate the dispute in this Court. As explained above, the presence Rule R-12 (of AAA's consumer arbitration rules) further supports the conclusion that Ms. Adame properly filed this dispute in a court of law where Ally does not play by the rules.

## VI.   ALLY FINANCIAL MAY NOT COMPEL ARBITRATION BECAUSE THE ARBITRATION CLAUSE IS UNENFORCEABLE UNDER THE DOCTRINE OF UNCONSCIONABILITY

Ally's arbitration clause is unconscionable and therefore unenforceable under California law.  Section 2 of the Federal Arbitration Act places arbitration

Kazerouni Law Group, APC
Costa Mesa, California

agreements on an equal footing with other contracts. *Buckeye Check Cashing, Inc.* v. *Cardegna,* 546 U.S. 440, 443 (2006).  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("The final phrase of § 2 … permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.' This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.") (citing *Doctor's Associates, Inc.* v. *Casarotto*, 517 U.S. 681, 687 (1996).[13] *See also* Restatement (Second) of Contracts § 208 (1979) (providing that "a contract or term thereof [may be] unconscionable").

Unconscionability in California is comprised of two parts: procedural unconscionability and substantive unconscionability. *Arguelles-Romero v. Superior Court*, 184 Cal. App. 4th 825, 837 (2010). Both elements must be present for a contract term to be considered unconscionable. *Id*. However, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id*. (citing *Armendariz v. Foundation Health Psychare Services, Inc*., 24 Cal. 4th 83, 114 (2000) (abrogated in part on other grounds by *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011)).  Here, both prongs of the unconscionability test are satisfied.

---

[13]  "[L]ike any clause, an arbitration clause is enforceable, 'save upon such grounds' as would suffice to invalidate any other, nonarbitration clause. The FAA thereby fulfills its policy of jettisoning the prior regime of hostility to arbitration. Like any other contractual clause, then, an arbitration clause may be invalid without violating the FAA if, for example, it is procured through fraud or forgery; there is mutual mistake or impossibility; the provision is unconscionable; or, as in this case, the terms of the clause are illegal under a separate federal statute which does not evidence a hostility to arbitration." *Vimar Seguros Y Reaseguros v. M/V Sky Reefer*, 515 U.S. 528, 555-556 (1995) (dissent by Justice Stevens) (emphasis added).

Kazerouni Law Group, APC
Costa Mesa, California

**A.   Procedural Unconscionability**

Procedural unconscionability focuses on the existence of oppression or surprise. *Newton v. American Debt Services*, 854 F. Supp. 2d 712, 722 (N.D. Cal. Feb. 22, 2012). "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Flores v. Transamerica Homefirst, Inc*., 93 Cal. App. 4th 846, 835 (2001). "Surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." *Id*.

Under California law, the adhesive nature of a contract is a consideration in determining whether the agreement is unconscionable, and such an agreement will not be enforced if it defies "the reasonable expectations of the weaker or adhering party or is unduly oppressive." *Trompeter v. Ally Fin., Inc*., 914 F. Supp. 2d 1067, 1072 (N.D. Cal. 2012) (internal citations omitted); *see also AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 1750, n.6 (2011) (the Supreme Court has indicated that state law bearing on contracts of adhesion remains good law). In other words, a contract of adhesion is procedurally unconscionable when it is "presented on a take-it-or-leave-it basis and [is] oppressive due to 'an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice.'" *Nagrampa v. MailCoups*, 469 F.3d 1257, 1281 (9th Cir. 2006). "Arbitration under the Act is a matter of consent, not coercion." *Volt Info. Scis. v. Bd. of Trs*., 489 U.S. 468, 479 (U.S. 1989).

*Trompeter v. Ally Financial, Inc*. is instructive. There, the plaintiff purchased a new truck in California, securing financing through the dealership. *Trompeter*, 914 F. Supp. 2d 1067 at 1070. Soon after executing the retail installment sales contract, the dealership assigned the contract to Ally. *Id*. When the plaintiff later defaulted on the contract by failing to make the required payments, Ally repossessed the truck. *Id*. Ally placed several calls to the plaintiff in relation to the default, allegedly recording those calls without warning or

Kazerouni Law Group, APC
Costa Mesa, California

consent. *Id.* at 1069-70. Upon filing a putative class action against the company for unlawful recording, Ally moved to compel arbitration based on an arbitration agreement contained in the consumer contract assigned to Ally. *Id.* The plaintiff argued that the adhesive nature of the contract rendered it procedurally unconscionable.

The *Trompeter* Court defined a contract of adhesion as "a standardized contract . . . imposed and drafted by the party of superior bargaining strength, [which] relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id.* at 72 (internal citations omitted). Notably, the arbitration agreement in *Trompeter* mirrors the agreement in the present case verbatim. [Dkt. No. 17-1, Exhibit 1, p. 7 of 27; Dkt. No. 17-2, Exhibit A]. Moreover, Ms. Adame entered the contract with the dealership (Acura 101 West) on a take it or leave it basis. In *Trompeter*, the Court rejected Ally's argument that it accepts assignments of contracts without arbitration clauses for the very reason that Trompeter, like the plaintiff here, entered into the relevant contract with the dealership, which left no room for negotiation. *Id.*

The *Trompeter* Court concluded that the standardized nature of the contract and its presentation on a "take it or leave it" basis established a minimal degree of procedural unconscionability. *Id.* The same should be found true, here, where an identical standardized form contract (Adame Decl., ¶ 7; Dkt. No. 17-1, Exhibit 1; Dkt. No. 17-2, Exhibit A) was imposed on Ms. Adame on a take-it-or-leave-it basis. Adame Decl., ¶ 7.

As such, the Court should further find that the arbitration agreement is procedurally unconscionable.

## B.     Substantive Unconscionability

Substantive unconscionability focuses on the one-sidedness of the contract terms. There is no mutuality if the arbitration agreement "compels arbitration of the claims more likely to be brought by the weaker party but exempts from

arbitration the types of claims that are more likely to be brought by the stronger party." *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 724 (2004) (citation omitted). A provision may also be substantively unconscionable "when the party imposing arbitration mandates a post-arbitration proceeding, either judicial or arbitral, wholly or largely to its benefit at the expense of the party on which the arbitration is imposed." *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1071 (2003).

Again, the *Trompeter* decision is instructive because the arbitration agreement in that case is identical to the agreement at issue in the present action. As in *Trompeter*, the agreement, here, is substantively unconscionable based on the following provisions of the arbitration agreement: (1) a party does not waive the right to arbitrate by using self-help remedies or filing suit; (2) if the arbitrator's award against a party is in excess of $100,000, that party may request a new arbitration by a three-arbitrator panel under the rules of the arbitration organization; (3) if the arbitration award includes injunctive relief, the enjoined party may demand a re-arbitration by the three-arbitrator panel; and (4) the appealing party requesting a new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs.

First, the arbitration agreement provides that a party does not waive the right to arbitration by using self-help remedies or filing suit in small claims court. As explained in *Trompeter*, under this provision "a creditor could repossess a vehicle or file suit to collect a debt owed by a defaulting car buyer, but still reserve the right to seek arbitration of a dispute in which it was named as a defendant." 914 F. Supp. 2d 1067 at 1073. As a practical matter, however, a debtor has no corresponding remedy.[14] Thus, this provision contributes to a

---

[14] In *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 922 (2015), the California Supreme Court found "nothing unconscionable about exempting the self-help remedy of repossession from arbitration." Respectfully, the inherent one-sidedness

Kazerouni Law Group, APC
Costa Mesa, California

finding of substantive unconscionability.

Second, the agreement provides that a party may seek re-arbitration by panel if the arbitrator issues an award against that party in excess of $100,000. Whereas a defect in the vehicle, for example, may give rise to a claim exceeding $100,000 *against* Ally, a claim *by* Ally against Ms. Adame is unlikely to exceed $100,000 since the collection of a consumer debt is not typically complex and is unlikely to give rise to an award highly disproportionate to the value of the debt. *Trompeter*, 914 F. Supp. 2d 1067 at 1074.

In *Little*, the party imposing an arbitration agreement included a $50,000 threshold amount for a right to an arbitral appeal. 29 Cal. 4th 1064 at 1072-74. The Court determined that, given the absence of a commercially legitimate reason for the threshold requirement and the fact that the party who imposed the arbitration agreement was the party that set the threshold, it was reasonable to conclude that said party did so with knowledge or belief that it would generally be a defendant who would benefit from a right to appeal limited to high value awards. *Id*. at 1073. It is likewise reasonable to conclude in the present case that the $100,000 threshold was imposed because the drafter believed such a requirement would serve the creditor—that is, Ally. For these reasons, the $100,000 threshold supports a finding of substantive unconscionability in that it is one-sided in favor of creditors.

Next, the arbitration agreement provides that when an arbitrator awards injunctive relief, the enjoined party may seek re-arbitration by the three-arbitrator panel. First, consumers are more likely to seek injunctive relief in a dispute subject to the arbitration agreement because creditors can block a car buyer's use of the vehicle through repossession without proceeding through arbitration or

in exempting a remedy only available to a creditor is by definition substantively unconscionable. Nonetheless, if this Court follows *Sanchez* on that issue, there are several other provisions to the arbitration agreement that satisfy the substantive unconscionability prong.

Kazerouni Law Group, APC
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

waiving its right to arbitrate. *Trompeter*, 914 F. Supp. 2d 1067 at 1075. This provision offers an opportunity for delay at the expense of consumers because a creditor can seek a stay of an injunction pending appeal to a three-arbitrator panel. *Id*. Thus, this provision was designed to benefit the creditor to the disadvantage of consumers.

Lastly, a finding of substantive unconscionability is supported by the provision that a party requesting re-arbitration shall be responsible for the filing fee and other re-arbitration costs, subject to a final determination by the arbitrators of a fair apportionment of costs. Here, it is not clear from the arbitration agreement that Ally will advance fees associated with pursuing an appeal, nor does the agreement provide for any other procedure or criteria for determining how much a consumer can afford. *See Gutierrez v. Autowest, Inc*., 114 Cal. App. 4th 77, 91-92 (2003) (holding that the absence of a provision for the consumer to obtain a cost waiver or reduction, when the judicial system provides an opportunity to make such requests, contributes to a finding of substantive unconscionability). The imposition of substantial fees and costs in pursuit of an appeal contributes to a finding of substantive unconscionability.  Based on all of the above factors, the Court should find that the arbitration agreement is substantially substantively unconscionable.

As a whole, the arbitration agreement is both procedurally and significantly substantively  unconscionable.  Consequently,  the  arbitration  agreement  is unenforceable under California contract law.

## VII.   SHOULD THE COURT GRANT THE MOTION TO COMPEL ARBITRATION, THE CASE SHOULD BE STAYED PENDING ARBITRATION RATHER THAN DISMISSED

Ally requests the Court dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  The FAA, 9 U.S.C. § 1 *et seq*., however, removes a district court's subject matter jurisdiction to hear a claim only when the

claim must be submitted to arbitration. Therefore, the Court should not dismiss this case.

As an alternative, Ally requests that the Court stay the case pending arbitration. Generally, Section 3 of the FAA "requires courts to stay litigation of arbitral claims pending arbitration of those claims in accordance with the terms of the agreement." *AT&T Mobility LLC*, 563 U.S. at 344. Should the Court grant the motion to compel arbitration, the Court should stay the action pending arbitration rather than dismiss the action.  Ally would suffer no hardship by a stay of the proceeding pending arbitration.  Indeed, Ally has made no effort to argue that it would suffer any undue prejudice or hardship were the Court to stay the case pending arbitration.

## VIII.   CONCLUSION

In sum, the Court should deny Ally's motion to compel arbitration because: 1) Ms. Adame has properly elected to litigate her TCPA claims against Ally pursuant to Rule R-1(d) of AAA's consumer arbitration rules; 2) Ally has waived through its conduct any right to arbitrate the dispute; 3) Ally is equitably estopped from enforcing the arbitration agreement; 4) Ally has materially breached the arbitration agreement, entitling Ms. Adame to rescind the arbitration agreement; and 5) the arbitration agreement is procedurally and substantively unconscionable and therefore unenforceable.

Dated: August 7, 2017                    Respectfully submitted,

                                         **KAZEROUNI LAW GROUP, APC**

                                         By: _s/ Abbas Kazerounian_____
                                              ABBAS KAZEROUNIAN, ESQ.
                                              AK@KAZLG.COM
                                              ATTORNEYS FOR PLAINTIFF

Kazerouni Law Group, APC
Costa Mesa, California

Additional Plaintiff's Counsel

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022