1  MARK D. LONERGAN (State Bar No. 143622)
   mdl@severson.com
2  ALISA A. GIVENTAL (State Bar No. 273551)
   aag@severson.com
3  SEVERSON & WERSON
   A Professional Corporation
4  One Embarcadero Center, Suite 2600
   San Francisco, California 94111
5  Telephone: (415) 398-3344
   Facsimile: (415) 956-0439
6
7  Attorneys for Defendant
   ALLY FINANCIAL INC.

8

9              UNITED STATES DISTRICT COURT

10    CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION

11

12  MICHELLE ADAME,                    Case No. 2:17-CV-01654

13              Plaintiff,             **REPLY IN SUPPORT OF ALLY
                                       FINANCIAL INC.'S MOTION TO
14       vs.                           COMPEL ARBITRATION**

15  ALLY FINANCIAL, INC.,
                                       **Date:** August 28, 2017
16              Defendant.             **Time:** 1:30 p.m.
                                       **Courtroom:** 10A
17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ............................................................................. 1

II.    ALLY ACTED CONSISTENTLY WITH AAA RULES ................................ 3

III.   ANY DELAY IN RESOLUTION AND COST INCURRED BY
       PLAINTIFF IS NOT ATTRIBUTABLE TO ALLY ......................................... 4

IV.    ALLY DID NOT BREACH THE ARBITRATION AGREEMENT .............. 8

V.     THE CALIFORNIA SUPREME COURT HAS REJECTED
       PLAINTIFF'S UNCONSCIONABILITY ARGUMENT ............................. 10

VI.    THE PARTIES DELEGATED ALL QUESTIONS OF
       ARBITRABILITY TO THE ARBITRATOR .................................................. 11

VII.   CONCLUSION ................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**C**ASES

*Aanderud v. Superior Court*,
   No. F073277, 2017 WL 3185218 (Cal. Ct. App. July 26, 2017) .................. 11, 12

*Alan v. Superior Court*,
   111 Cal. App. 4th 217 (2003) ............................................................................. 8, 9

*ATSA of California, Inc. v. Continental Insurance Co.*,
   702 F.2d 172 (9th Cir.1983) ..................................................................................... 2

*Belke v. Merrill Lynch, Pierce, Fenner & Smith*,
   693 F.2d 1023 (11th Cir.1982) .............................................................................. 13

*Brown v. E.F. Hutton & Co., Inc.*,
   610 F.Supp. 76 (S.D.Fla.1985) ............................................................................ 13

*Brown v. ITT Consumer Financial Corp.*,
   211 F.3d 1217 (11th Cir.2000) ................................................................................ 9

*Cox Commc'ns, Inc. v. Healy*,
   136 S. Ct. 801 (2016) ................................................................................................. 6

*Dickinson v. Heinold Sec., Inc.*,
   661 F.2d 638 (7th Cir. 1981) .................................................................................... 5

*Fisher v. A.G. Becker Paribas Inc.*,
   791 F.2d 691 (9th Cir. 1986) ............................................................... 1, 2, 12, 13

*Golub v. Kidder, Peabody & Co.*,
   89 Civ. 5903 (CSH) (S.D.N.Y. June 5, 1990) ...................................................... 5

*Groom v. Health Net*,
   82 Cal. App. 4th 1189 (2000) .................................................................................. 1

*Guess?, Inc. v. Superior Court*,
   79 Cal. App. 4th 553 (2000) .................................................................................... 5

*In re Cox Enterprises, Inc. Set-top Cable Television Box*
   *Antitrust Litig.*,
   790 F.3d 1112 (10th Cir. 2015) ............................................................................... 6

*In Re Tyco Int'l Ltd. Sec. Litig.*,
    422 F.3d 41 (1st Cir. 2005) ....................................................................... 6

*Iskanian v. CLS Transp. Los Angeles, LLC*,
    59 Cal. 4th 348 (2014) ............................................................................... 2

*Kaneko Ford Design v. Citipark, Inc.*,
    202 Cal. App. 3d 1220 (Ct. App. 1988) ................................................... 6

*Kolacek v. Gemexco Trading, Inc.*,
    No. 90 CIV. 5760 (JMC), 1991 WL 2857 (S.D.N.Y. Jan. 10, 1991) .................. 5

*Lake Communications, Inc. v. ICC Corp.*,
    738 F.2d 1473 (9th Cir.1984) ................................................................. 12

*McManus v. CIBC World Markets Corp.*,
    109 Cal.App.4th 76 (2003) ...................................................................... 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ................................................................................... 12

*Norgren, Inc. v. Ningbo Prance Long, Inc.*,
    No. 14-CV-03070-CBS, 2015 WL 5562183 (D. Colo. Sept. 22,
    2015) ................................................................................................ 6, 9, 10

*Quevedo v. Macy's, Inc.*,
    798 F. Supp. 2d 1122 (C.D. Cal. 2011) ................................................... 2

*Richards v. Ernst & Young, LLP*,
    744 F.3d 1072 (9th Cir. 2013) ................................................................. 1

*Rodriguez v. American Technologies, Inc.*,
    136 Cal.App.4th 1110 (2006) ................................................................. 11

*Sanchez v. Valencia Holding Co., LLC*,
    61 Cal. 4th 899 (2015) ....................................................................... 10, 11

*Shinto Shipping Co., Ltd. v. Fibrex & Shipping Co.*,
    572 F.2d 1328 (9th Cir.1978) .............................................................. 2, 12

*Sobremonte v. Superior Court* (*Bank of Am. Nat. Tr. & Sav. Ass'n*),
    61 Cal. App. 4th 980 (1998) ................................................................... 6

*Sonic Auto., Inc. v. Younis*,
    No. CV1500717RGKAGRX, 2015 WL 12656915 (C.D. Cal. Oct.
    19, 2015) ....................................................................................................... 1

*Southwest Industrial Import & Export, Inc. v. Wilmod Co., Inc.*,
    524 F.2d 468 (5th Cir.1975) ......................................................................... 5

*Specialty Merch. Corp. v. Navigators Ins. Co.*,
    No. CV125702GHKAGRX, 2012 WL 12892158
    (C.D. Cal. Oct. 23, 2012) ............................................................................... 5

*Saint Agnes Med. Ctr. v. PacifiCare of California*,
    31 Cal. 4th 1187 (2003) ................................................................................ 2

*Walker v. J.C. Bradford & Co.*,
    938 F.2d 575 (5th Cir. 1991) ........................................................................ 5

**RULES**

AAA Rules
    Rule R-2(a)(1) ................................................................................................ 5
    Rule R-14 ...................................................................................................... 12

Federal Rules of Evidence
    Rule 408 .......................................................................................................... 4

# I.  INTRODUCTION

Plaintiff contends that Ally waived arbitration of this dispute because of its alleged violation of AAA rules in unrelated disputes with third parties. That is not the law in California. Although "[a] party to an arbitration agreement may by conduct waive its right to compel arbitration," it is well established that "***the conduct must have caused prejudice*** to the opposing party."[1] Not only are her allegations inaccurate and overstated,[2] but also, Plaintiff was not and could not have been prejudiced by Ally's actions in disputes to which she was not a party and of which she was not even aware.[3] Thus, the premise of Plaintiff's argument is irrelevant to the analysis of waiver.

What matters here is that as to Plaintiff, Ally acted consistently with AAA rules and its conduct caused no prejudice to Plaintiff. Immediately upon notice of a dispute with Plaintiff, Ally registered its arbitration clause in a manner provided for

---

[1] *Groom v. Health Net*, 82 Cal. App. 4th 1189, 1194 (2000) (emphasis in original); *see also: Sonic Auto., Inc. v. Younis*, No. CV1500717RGKAGRX, 2015 WL 12656915, at *3 (C.D. Cal. Oct. 19, 2015) ("Under the FAA, a party asserting the defense of waiver must show: (1) knowledge of an existing right to compel arbitration, (2) acts inconsistent with that existing right, and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." (*citing Richards v. Ernst & Young, LLP*, 744 F.3d 1072, 1074 (9th Cir. 2013); *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)).

[2] As discussed in the concurrently-filed Declaration of Alisa A. Givental in Support of Reply ("Reply Declaration"), Plaintiff's claim of an "unmistakable pattern of disregard by Ally for AAA's rules going as far back as the year 2013," Dkt. No. 22, 8:8-10, is unsupported by AAA documents he provides in support. There was at most one instance of a failure to pay a fee in 2013, which AAA cannot confirm because its records have been purged, and one instance of a fee dispute in 2016, which was resolved and ultimately administered by AAA. That is not a pattern. The remaining denials to administer to which Plaintiff cites are not instances of non-compliance because the denials arose as a result of one or the other of the two fee issues. AAA has continued to arbitrate cases involving Ally during the relevant time-period, including two of the disputes to which Plaintiff cites as declined, as well as Plaintiff's dispute. *See* Reply Declaration, ¶ 8.

[3] Plaintiff admits that "[p]rior to filing her demand to arbitrate with AAA, Ms. Adame was not aware of Ally's long history of non-compliance with AAA's rules." Dkt. No. 22, 8:5-7. There was no long history of non-compliance, *see* Reply Declaration, ¶ 8, and Plaintiff could not have been harmed by what she knew nothing about.

REPLY IN SUPPORT OF ALLY FINANCIAL, INC.'S MOTION TO COMPEL ARBITRATION

by AAA, the clause was reviewed by AAA, and AAA agreed to administer the arbitration between the parties. There was no delay by Ally and the entire procedure concluded within six weeks. To the extent that any subsequent delay in resolution was prejudicial to Plaintiff, it was not caused by conduct attributable to Ally in any way.

Other than delay, Plaintiff's only arguments in support of prejudice are that she had to wait 106 days to receive the refund of her $200 filing fee from AAA and that she was out $5.12 she spent on serving Ally with notice of dispute by certified mail. But, "courts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses."[4] Given that the refund ultimately arrived, the "costs" here are insignificant. And the costs were not incurred as a result of Ally's conduct in any event.

Plaintiff's failure to show prejudice dooms her waiver argument because "prejudice ... is critical in waiver determinations."[5]

Even if waiver could bar a party from exercising its contractual right to arbitrate absent prejudice, which it cannot,[6] as discussed in Ally's moving papers, Plaintiff cannot meet the other elements of waiver: "knowledge of an existing right

---

[4] *Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1132 (C.D. Cal. 2011) (*citing Saint Agnes Med. Ctr. v. PacifiCare of California*, 31 Cal. 4th 1187 (2003)). Typically, prejudice exists "where the petitioning party used the judicial discovery processes to gain information about the other side's case that could not have been gained in arbitration; where a party unduly delayed and waited until the eve of trial to seek arbitration; or where the lengthy delays associated with the petitioning party's attempts to litigate resulted in lost evidence" *Id.* (Citations omitted.)

[5] *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 376–77 (2014).

[6] *See e.g. Shinto Shipping*, 572 F.2d at 1330 (the court "must be convinced not only that the appellee acted inconsistently with that arbitration right, but that the appellant was prejudiced by this action before we can find a waiver"); *ATSA of California, Inc. v. Continental Insurance Co.*, 702 F.2d 172, 175 (9th Cir.1983) (inconsistent behavior alone is not sufficient; the party opposing arbitration must have suffered prejudice), <u>amended</u>, 754 F.2d 1394 (1985).

to compel arbitration" and "acts inconsistent with that existing right."[7] Ally was not aware of Plaintiff's dispute when AAA issued its initial denial, and Ally took no actions inconsistent with its intent to arbitrate thereafter.

As discussed below, contrary to Plaintiff's claim, Ally did not breach the arbitration agreement, and the Supreme Court of California has already rejected the argument that a substantively identical arbitration clause is unconscionable. Thus, there is no basis for the Court to deny Ally's motion to compel arbitration of Plaintiff's dispute.

If the Court has any doubt, it should nonetheless order the parties to arbitration because they clearly and unmistakably delegated all questions of arbitrability to the arbitrator. Ally respectfully requests for the Court to do so.

## II.  ALLY ACTED CONSISTENTLY WITH AAA RULES

Aside from Plaintiff's irrelevant contention that Ally violated AAA rules in arbitration with other parties, she also repeatedly claims that Ally should have registered the subject arbitration clause four years ago, when she first entered her contract with Ally.[8] This claim is nonsensical because AAA Rule-12, upon which she relies, became effective nearly 2.5 years *after* the formation of the contract at issue.[9] Ally could not have complied with a then nonexistent rule.[10]

Nor was Ally required to register the arbitration clause immediately upon AAA Rule-12's eventual adoption. AAA Rule-12 provides that "[i]f a business does

---

[7] *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)

[8] "The consumer clause was not registered with the AAA until May 19, 2016… even though the [contract] containing the arbitration language was signed on Aril 9, 2012… nearly four years prior." Dkt. No. 22, at 17:21-18:1-5; *id.*, at 16:21-23 ("By seriously and inexcusably delaying in registering its consumer clause with AAA, which was only done about 4 years after the automobile loan agreement was signed… ."); *id.* at 20:5-7 ("It was not until 4 years after the automobile loan contract was signed that AAA [sic] registered its consumer clause with AAA, and ten days after the May 9, 2016 demand for arbitration to Ally… .").

[9] Dkt. No. 22-2, Exh. A 01 ("Rules Amended and Effective September 1, 2014).

[10] *See* Dkt. No. 22.

not submit its arbitration agreement for review and a consumer arbitration then is filed with AAA, the AAA will conduct an expedited review *at that time*."[11] The AAA rules therefore contemplate that an arbitration clause may be submitted to AAA when a dispute arises.

That is exactly what happened here. As Plaintiff concedes, the clause was registered with AAA "[t]en days *after* Ms. Adame submitted her demand to arbitrate."[12] This was consistent with the terms of Rule-12 and called for an expedited review of Ally's arbitration clause. AAA reviewed the clause and confirmed its willingness to arbitrate Plaintiff's dispute within a month.[13]

Thus, neither the content of the clause nor the manner in which it was submitted to AAA amounts to waiver as AAA has itself confirmed. Since, as discussed below, the parties delegated questions of arbitrability to the arbitrator, there is no reason why AAA's review of Ally's clause and willingness to arbitrate is not dispositive.

### III.  ANY DELAY IN RESOLUTION AND COST INCURRED BY PLAINTIFF IS NOT ATTRIBUTABLE TO ALLY

Plaintiff's various arguments regarding Ally being responsible for delay in resolution of her dispute are unconvincing.

Her contention that "[b]y agreeing to mediation,[14] rather than insisting that the

---

[11] Dkt. No. 22-2, Exh. A 16 (emphasis added).

[12] Dkt. No. 22, fn. 9 (emphasis in original).

[13] Dkt. No. 17-1, at ¶ 7, Exh. 5.

[14] In a footnote, Plaintiff quibbles that in referencing her 10-month delay in filing this lawsuit, Ally made no mention of the parties' mediation before the lawsuit was filed. Dkt. No. 22, fn. 12. Ally might quibble in response that its willingness to participate in mediation should not be used offensively by the person who proposed mediation in the first place. *See* Reply Declaration ¶ 3. Though not quite in violation of Fed. R. Evid. 408, Plaintiff's references to the parties' mediation in her brief trigger the reasons for its existence – encouraging attempts at informal resolution rather than suggesting that they should be avoided. Moreover, Plaintiff's contention "that invitation is not the same as insisting on a right to require the dispute be arbitrated," because the former is "a trick," is not well-taken. Dkt. No. 22, 9:15-19. (footnote continued)

1  dispute had to be arbitrated… Ally has further demonstrated its waiver," is bizarre.[15]

2  Per AAA Rule R-2(a)(1), an arbitration must be initiated by the claimant (not the

3  respondent), by written demand to arbitrate, which: explains[s] the dispute,"

4  "[s]pecif[ies] the amount of money in dispute," and "[s]tate[s] what the claimant

5  wants."[16] Since Ally had no dispute to submit for arbitration and Plaintiff did not

6  submit her dispute, Ally could not have waived its right to arbitrate by agreeing to

7  attempt resolution of Plaintiff's dispute through mediation.[17]

8      Indeed, the right to arbitration and the possibility of waiver are triggered upon

9  commencement of a lawsuit, not pre-litigation discussions.[18] Thus, Ally could not

10 have waived arbitration by not insisting on it before litigation commenced.

11 Plaintiff's citations do not support a contrary result, because they involve post-

12

13 ———————————

14 Prior to litigation, Ally repeatedly informed Plaintiff that it would insist on arbitration if litigation were commenced, but in good faith sought to avoid that contingency by agreeing to mediation. *See e.g.* Reply Declaration ¶¶ 3, 5.

15 [15] Dkt. No. 22:11-14.

16 [16] Dkt. No. 22-2, Exh. A 11.

17 [17] *See Kolacek v. Gemexco Trading, Inc.*, No. 90 CIV. 5760 (JMC), 1991 WL 2857,
18 at *3 (S.D.N.Y. Jan. 10, 1991) (citing *Golub v. Kidder, Peabody & Co.*, 89 Civ. 5903 (CSH) (S.D.N.Y. June 5, 1990) ("there is no requirement in law that a party to
19 an arbitration agreement demand arbitration in the face of claims which that party rejects, even if the underlying correspondence contains statements of intent by the
20 other party to commence litigation at some time in the future."); *see also: Dickinson v. Heinold Sec., Inc.*, 661 F.2d 638, 641 (7th Cir. 1981) (rejecting the plaintiff's
21 argument that an 18-month delay in moving to compel arbitration amount to waiver because "This period of delay encompasses some attempts by the parties to settle the
22 dispute….Preliminary negotiations concerning a settlement are not sufficient to waive arbitration."); *Southwest Industrial Import & Export, Inc. v. Wilmod Co., Inc.*,
23 524 F.2d 468, 470 (5th Cir.1975) ("Participation in settlement negotiations and even alleged contract breach or repudiation have been held not to preclude the right to arbitrate").

24 [18] *Specialty Merch. Corp. v. Navigators Ins. Co.*, No. CV125702GHKAGRX, 2012
25 WL 12892158, at *3 (C.D. Cal. Oct. 23, 2012) ("Plaintiffs offer no authority to support the proposition that a party's pre-litigation failure to invoke the right to
26 arbitration alone could constitute a waiver."); *see also: Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 578 (5th Cir. 1991) ("the two-year lapse between the occurrence
27 of the events prompting this suit and the filing of the motion to compel arbitration is not determinative. Pre-suit inactivity does not invoke the judicial process and cannot support a finding of waiver.")

28

1  litigation waivers.[19]

2      The claim that the "over 1 year" delay in resolution of Plaintiff's dispute is

3  attributable to Ally, and that were it not for Ally's conduct, it "would have likely

4  been resolved… many months ago in arbitration,"[20] is untrue. As already discussed,

5  Ally registered its clause in a manner contemplated by AAA rules. Plaintiff was

6  informed that AAA would administer the arbitration on June 24, 2016.[21] She

7  declined to arbitrate and Ally had no dispute to submit to arbitration. Then, there

8  was no contact from Plaintiff for two-and-a-half months, until, on September 12,

9  2016, Plaintiff proposed mediation.[22] The mediation took place on December 12,

10  2016, but was unsuccessful.[23]

11      Plaintiff waited another three months to file this action.[24] After the parties met

12  and conferred about arbitration and did not reach an agreement, Ally filed its Motion

13  to Compel Arbitration on May 19, 2017, with the hearing date set for July 10,

14  2017.[25] Plaintiff requested an extension to file her Opposition, initially due on June

15

16

---

17  [19] *Guess?, Inc. v. Superior Court*, 79 Cal. App. 4th 553, 555, 94 Cal. Rptr. 2d 201 (2000) (post litigation waiver); *Norgren, Inc. v. Ningbo Prance Long, Inc.*, No. 14-

18  CV-03070-CBS, 2015 WL 5562183 (D. Colo. Sept. 22, 2015) (same); *Kaneko Ford Design v. Citipark, Inc.*, 202 Cal. App. 3d 1220, 1225, 249 Cal. Rptr. 544 (Ct. App.

19  1988) (same); *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1116 (10th Cir. 2015), *cert. denied sub nom. Cox Commc'ns,*

20  *Inc. v. Healy*, 136 S. Ct. 801, 193 L. Ed. 2d 712 (2016) (same); *Sobremonte v. Superior Court* (*Bank of Am. Nat. Tr. & Sav. Ass'n*), 61 Cal. App. 4th 980, 993, 72

21  Cal. Rptr. 2d 43 (1998), as modified (Feb. 26, 1998) ("The Bank then did nothing to bring about arbitration until 10 months after service of the complaint, and 6 weeks

22  prior to trial."); *In Re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 43 (1st Cir. 2005) ("dilatory tactics engaged in by Swartz continued even after Tyco filed its district

23  court complaint in March 2003.").

    [20] Dkt. No. 22, at 17:2-9.

24  [21] Dkt. No. 17-1, at ¶ 8, Exh. 6.

25  [22] Reply Declaration, ¶ 3.

26  [23] *Id*. at ¶ 4

27  [24] Dkt. No. 1.

28  [25] Reply Declaration, ¶ 7; *see also*: Dkt. No. 17.

19, 2017, in order to conduct discovery by serving a subpoena on AAA.[26] The parties stipulated to postpone the hearing on the Motion to August 28, 2017 in order to allow Plaintiff to serve the subpoena.[27]

Having been informed since June 24, 2016 that she could arbitrate her dispute and having postponed taking action of any kind to resolve the dispute for months at a time, Plaintiff cannot earnestly contend that Ally is responsible for the delay in resolution.

Nor is Ally accountable for Plaintiff having to wait 106 days for the refund of her AAA filing fee.[28] Ally has no control over AAA's refund procedures. And, both the delay in the refund and Plaintiff having to incur "$5.12 to serve the demand to arbitrate by certified mail on Ally," would have been mitigated had Plaintiff agreed to arbitrate.

Finally, to be relevant to the waiver analysis, any alleged delay must be inconsistent with knowledge of the existing right to arbitrate ***and*** be prejudicial to Plaintiff. Plaintiff cannot meet these requirements.

The delay in refunding the initiation fee by AAA – even if prejudicial to Plaintiff – was not an act by Ally, so it cannot be inconsistent with Ally's knowledge of an existing right to arbitrate. The same is true of Plaintiff's having to pay the $5.12 certified mail fee. Ally's actions from the date of notice of Plaintiff's dispute to the date of knowledge that AAA was willing to administer it, were clearly consistent with its intention to arbitrate. Settlement discussions are not inconsistent with knowledge of a right to arbitrate. As discussed in the Reply Declaration, Ally was clear throughout that it would move to compel arbitration if litigation were ever initiated. And, Ally took no action since this case was filed that Plaintiff contends

---

[26] Reply Declaration, ¶ 7; *see also:* Dkt. No. 19.

[27] *Id.*

[28] Dkt. No. 22, 17:17-18.

REPLY IN SUPPORT OF ALLY FINANCIAL, INC.'S MOTION TO COMPEL ARBITRATION

1   was inconsistent with an intent to arbitrate.

2   **IV.  ALLY DID NOT BREACH THE ARBITRATION AGREEMENT**

3   Plaintiff contends that failure to comply with AAA rules and the initial denial

4   to arbitrate by AAA amount to a material breach of the arbitration agreement by

5   Ally that entitles her to litigate this case in Court.[29]

6   As already discussed above, Plaintiff's failure to show prejudice renders  this

7   argument moot. The argument is faulty for the additional reason that Plaintiff's

8   analysis is wrong.

9   Plaintiff cites to *Alan v. Superior Court*, 111 Cal. App. 4th 217, 228 (2003)

10  for the proposition "that an agreement to arbitrate before a particular forum is as

11  integral a term of a contract as any other" and that Ally's actions that preclude

12  arbitration before the AAA, render it appropriate for the Court to deny Ally's

13  motion. The argument should be rejected as nothing precludes the parties from

14  arbitrating before the AAA. ***AAA has indicated its readiness to administer this***

15  ***dispute[30].***

16  Moreover, *Alan* did not involve analysis of the consequences of a material

17  breach of an arbitration agreement. Rather, in *Alan*, the parties contractually selected

18  an exclusive arbitral forum that was not available in California. Finding that the

19  exclusive forum was an integral term of the parties' agreement, the Court declined

20  to appoint an arbitrator of its own because it did not deem this was an adequate

21  alternative to the parties' agreement.[31]

22  Since AAA agrees to arbitrate the parties' dispute, there is no need to

23  consider whether an adequate alternative to AAA exists in order for the parties'

24  contractual promises to be enforced, so *Alan* is not controlling.

25  

26  ---

   [29] Dkt. No. 22, 19:1-3.

27  [30] *See* Dkt. No. 17-1, ¶ 7, Exh. 5.

   [31] *Alan*, 111 Cal. App. 4th at 228.

28

1    Even if AAA were not available, unlike in *Alan*, the parties here did not

2    designate AAA as an exclusive forum. The contract provides for the National

3    Arbitration Forum; AAA; "or any other organization [Plaintiff] may choose subject

4    to [Ally's] approval."[32] Thus, even if Ally had breached the rules enacted by AAA

5    after the formation of the parties' agreement, the breach would not be material to the

6    arbitration agreement because Plaintiff and Ally have not selected AAA as an

7    exclusive forum. For this reason, too, *Alan* is not controlling.

8    Moreover, the Court in *Alan* recognized that "consistent with the California

9    Arbitration Act and the Federal Arbitration Act, if the obstacle to arbitration can be

10   resolved by the appointment of an arbitrator, a court may, … make such an

11   appointment and compel the parties to arbitrate."[33] Here, there is no obstacle, since

12   AAA relayed its agreement to arbitrate Plaintiff's dispute, but even if there were, as

13   recognized by the Court in *Alan*, here, any obstacle can easily be resolved by

14   selecting another arbitration organization.

15   Plaintiff's citation to *Norgren, Inc. v. Ningbo Prance Long, Inc.*,[34] a

16   nonbinding District of Colorado decision, does not support her argument. *Norgren*

17   concerns a defendant's refusal to pay its portion of arbitration fees in an ongoing

18   arbitration initiated by plaintiff after the defendant prevailed on a motion to compel

19   arbitration; the court declined to send the parties to arbitration of the same dispute a

20   second time, finding that the defendant breached the arbitration agreement.

21   Plaintiff does not contend, nor can she, that Ally failed to pay its share of the

22   fees in an arbitration between the parties. Rather, she argues that Ally breached the

---

[32] Dkt. No. 17-2, Exh. A, p. 2.

[33] *Alan*, 111 Cal. App. 4th at 217, 228–29; *see also: Brown v. ITT Consumer Financial Corp.,* 211 F.3d 1217, 1222 (11th Cir.2000) (arbitration may proceed in forum not mentioned in arbitration clause where choice of arbitral forum was not integral part of agreement); *McManus v. CIBC World Markets Corp.*,109 Cal.App.4th 76 (2003).

[34] *Norgren,* 2015 WL 5562183.

1 arbitration agreement with her as a result of alleged conduct in other actions.
2 Plaintiff's argument is not only unsupported by the narrow holding in *Norgren*, but
3 also raises due process concerns if a defendant indeed can waive a contractual right
4 by acts unrelated to the contract at issue.[35]

5      Plaintiff's comment regarding differences, "some of which are material,"
6 between the arbitration clause in her agreement and the one registered with AAA,
7 are unsubstantiated by analysis of any kind. She does not identify which differences
8 are material or why, nor does she explain how the registration of a slightly different
9 clause with AAA is a breach of Ally's agreement with Plaintiff or prejudicial to
10 her.[36]

11     **V.  THE CALIFORNIA SUPREME COURT HAS REJECTED**
       **PLAINTIFF'S UNCONSCIONABILITY ARGUMENT**
12

13      Plaintiff's argument that the arbitration clause at issue is substantively
14 unconscionable fails because it is identical to the argument rejected by the
15 California Supreme Court in *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th
16 899, 353 P.3d 741 (2015).[37] She concedes that both substantial and procedural

17

18

---

19 [35] Plaintiff's admission that "[p]rior to filing her demand to arbitrate with AAA,
20 [she] was not aware of Ally's long history of non-compliance with AAA's rules,"
demonstrates that what happened in those other cases had no effect on her decision
to enter into an arbitration agreement with Ally. Dkt. No. 22, 8:5-7.

21 [36] Dkt. No. 22, 20-21.

22 [37] Compare: *Sanchez*, 61 Cal. 4th 899, 353 P.3d 741 (2015) (finding: (1) arbitration
23 provision's clause stating that an award was final except that, if the award was $0 or
in excess of $100,000 or included injunctive relief, it could be appealed to a three-
arbitrator panel, was not, on its face, unreasonably one-sided and unenforceable as
24 unconscionable; (2) arbitration provision's clause stating that dealer would advance
25 buyer's fees and that, in the case of appeal to a three-arbitrator panel, the appealing
party "shall be responsible for the filing fee and other arbitration costs subject to a
final determination by the arbitrators of a fair apportionment of costs," was not
26 unconscionable absent any showing that cost of appellate arbitration filing fees was
unaffordable; (3) arbitration provision's clause stating that "You and we retain any
27 rights to self-help remedies, such as repossession" did not render arbitration
provision unconscionable) and, Dkt. No. 22, at 25:7-18.

28

unconscionability are required for a finding of unconscionable contract,[38] rendering the finding of no substantial unconscionability in *Sanchez* dispositive. The arbitration clause is not unconscionable.

## VI.   THE PARTIES DELEGATED ALL QUESTIONS OF ARBITRABILITY TO THE ARBITRATOR

To the extent that there is any doubt regarding the arbitrability of Plaintiff's dispute, the Court need not decide the issues raised in Plaintiff's Opposition because the parties clearly and unmistakably delegated all questions of arbitrability to the arbitrator.

In their contract, Plaintiff and Ally agreed that "[a]ny claim or dispute, whether in contract, tort, statute or otherwise (***including the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute***), … shall … be resolved by neutral, binding arbitration and not by a court action."[39] This language demonstrates clear and unmistakable intent to delegate all questions of arbitrability to the arbitrator.[40]

"This is not the only evidence of the parties' intent to contractually delegate issues of arbitrability to a decision maker other than the court. An arbitration provision's reference to, or incorporation of, arbitration rules that give the arbitrator the power or responsibility to decide issues of arbitrability may constitute clear and unmistakable evidence the parties intended the arbitrator to decide those issues."[41]

---

[38] Dkt. No. 17, 22:12-14.

[39] Dkt. No. 17-2, Ex. A (emphasis added).

[40] *See e.g. Aanderud v. Superior Court*, No. F073277, 2017 WL 3185218, at *6 (Cal. Ct. App. July 26, 2017) (arbitration provision states that the parties "agree to arbitrate all disputes, claims and controversies arising out of or relating to ...  the interpretation, validity, or enforceability of this Agreement, including the determination of the scope or applicability of this Section 5 [the 'Arbitration of Disputes' section],… delegates to the arbitrator questions of arbitrability and is clear and unmistakable evidence that the parties intended to arbitrate arbitrability.").

[41] *See id.* (citing e.g. *Rodriguez v. American Technologies, Inc.,* 136 Cal.App.4th 1110, 1123 (2006) (contract mandated arbitration in accordance with American (footnote continued)

1   Here, AAA Rule R-14 specifically states that "[t]he arbitrator shall have the power

2   to rule on his or her own jurisdiction, including any objections with respect to the

3   existence, scope, or validity of the arbitration agreement or to the arbitrability of any

4   claim or counterclaim."[42]

5        Submitting all issues, including unconscionability,[43] raised by Plaintiff in

6   opposition to the arbitrability of her dispute to AAA is particularly appropriate in

7   this case because the majority of her arguments pertain directly to whether Ally's

8   alleged violation of AAA's rules amounts to waiver of the right to arbitrate. AAA is

9   in the best position to make this assessment.

10  ## VII.  CONCLUSION

11       Waiver of a contractual right to arbitration is not favored.[44] Any examination

12  of whether the right to compel arbitration has been waived must be conducted in

13  light of the strong federal policy favoring enforcement of arbitration agreements.[45]

14

15  _____

16  Arbitration Association (AAA) construction arbitration rules that specify arbitrator's authority to determine the scope of the clause).

17  [42] Dkt. No. 22-2, p. 18, Plaintiff's Exhibit A 17.

18  [43] *Aanderud,* 2017 WL 3185218, at *10 (vacating portions of the superior court's

19  order in which the court had decided that the arbitration agreement is not unconscionable because in light of the parties' clear intent, such questions were to

20  be submitted to the arbitrator); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25 (1983) (when there are doubts concerning the scope of

21  arbitrable issues, we should resolve them in favor of arbitration "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").

22  [44] *Fisher v. A.G. Becker Paribas Inc.,* 791 F.2d 691, 694 (9th Cir. 1986) (*citing: Lake Communications, Inc. v. ICC Corp.,* 738 F.2d 1473, 1477 (9th Cir.1984);

23  *Shinto Shipping Co., Ltd. v. Fibrex & Shipping Co.,* 572 F.2d 1328, 1330 (9th Cir.1978)).

24  [45] *Fisher,* 791 F.2d at 694; *see also: Moses H. Cone Hospital,* 460 U.S. at 24–25 (as

25  a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the issue is the construction of the

26  contract language itself or an allegation of waiver, delay, or a like defense to arbitrability); *Shinto Shipping,* 572 F.2d at 1330 (waiver is not favored and the facts

27  must be viewed in light of the strong federal policy supporting arbitration agreements).

28

1   Because waiver of the right to arbitration is disfavored, "any party arguing waiver of
2   arbitration bears a heavy burden of proof."[46]

3         Plaintiff has not met this heavy burden, rendering it appropriate for the Court
4   to grant Ally's Motion. If there is any doubt, the Court need not decide the question
5   of arbitrability because the parties clearly and unmistakably delegated this question
6   to the arbitrator.

7   DATED:  August 14, 2017            SEVERSON & WERSON
8                                                          A Professional Corporation

9

10                                                 By:   _/s/ Alisa A. Givental_
                                                              Alisa A. Givental
11

12                                                 Attorneys for Defendants ALLY FINANCIAL
                                                   INC.
13

14

15

16

17

18

19

20

21

22

23

24

25

26   _____
     [46] *Fisher,* 791 F.2d at 694 (*citing: Belke v. Merrill Lynch, Pierce, Fenner & Smith,*
27   693 F.2d 1023, 1025 (11th Cir.1982); *Brown v. E.F. Hutton & Co., Inc.,* 610
     F.Supp. 76, 79 (S.D.Fla.1985)).
28